UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-21783-CIV-HUCK/O'SULLIVAN

TRANS-AMERICAN IMPORT
& EXPORT CORPORATION,

    Plaintiff,

v.

COLONY INSURANCE COMPANY,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

In this insurance dispute arising out of a loss caused by fire, Plaintiff Trans-American Import & Export Corporation has sued Defendant Colony Insurance Company for declaratory relief, breach of contract, and equitable estoppel. Before the Court is Colony's motion to dismiss Trans-American's claims for declaratory relief and equitable estoppel (Doc. #7). For the reasons below, the Court finds that Trans-American states a proper claim for declaratory relief. Equitable estoppel, however, is not available as a cause of action. Accordingly, the Court grants in part and denies in part Colony's motion, and dismisses Trans-American's claim for equitable estoppel.

**I.**    **Background**[1]

In September 2007, Trans-American applied for a commercial general liability insurance policy with Colony for the commercial property located at 4150 NW 7th Street, Miami, Florida. Colony inspected the property and issued an insurance policy. The policy covered the period from September 14, 2007 to September 14, 2008. The policy provided coverage for losses due to fire. However, the policy also included an endorsement, titled Fire Protective Safeguards, with the following exclusion:

---

[1] The facts in this section are derived from the allegations in the Complaint and the attachments to the Complaint. The Court accepts the factual allegations as true for the purpose of ruling on Colony's Motion to Dismiss. *See United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999).

> We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:
> . . . .
> 2. Failed to maintain any protective safeguard listed in the Schedule above in complete working order;
> 3. Failed to activate the safeguard system;

(Complaint Ex. B, Doc. #1-1 at 94.) The protective safeguards referred to in this exclusion are "smoke detectors, alarms & extinguishers." (*Id.* at 93.) Trans-American had smoke detectors and fire extinguishers at the building. It also had an operational alarm system, but the alarm system did not specifically monitor for fire.

On March 18, 2008, a fire caused damage to the property. Trans-American reported losses to Colony in the amount of $753,010.06. Colony initially accepted coverage for the losses and made two payments, totaling $441,285.72, to Trans-American in May and June 2008. Trans-American used the money to begin to make repairs. In June 2008, Trans-American notified Colony of the discrepancy between Trans-American's damages and Colony's payments. In July 2008, Trans-American requested that Colony resolve the dispute regarding the amount of damages through the appraisal process outlined in the insurance policy, but Colony refused. Instead, in a letter dated September 15, 2009, Colony denied coverage for the loss, stating:

> During your Examination Under Oath, it was determined that you failed to maintain and activate a protective safeguard listed in the Schedule of the subject policy. The applicable Schedule includes the following required fire protective safeguards: smoke detectors, *alarms* and extinguishers. You failed to maintain a fire alarm system, in direct violation of the subject policy, as the alarm monitoring agreement you produced did not monitor for fire. . . .
> The facts surrounding this loss, as outlined above, when applied to the policy exclusion cited herein, leaves Colony no choice but to deny coverage to you for your insurance claim. The loss claimed clearly fall [sic] within the "Fire Protective Safeguards" exclusion cited above.

(Complaint Ex. H, Doc. #1-1 at 107.)

Trans-American filed a three-count Complaint on April 23, 2010.[2] The Complaint sets forth claims for declaratory relief (Count I), breach of contract (Count II), and equitable estoppel (Count III). In Count I, Trans-American seeks a declaration (1) that Colony has waived any

---

[2] Trans-American filed its complaint in state court. Colony removed the case to this Court.

condition precedent with regard to fire protective safeguards, and (2) that there has been a covered loss under the policy. First, Trans-American claims that to the extent the insurance policy required Trans-American to have a fire alarm system, Colony waived the condition by accepting Trans-American's premium payments with actual or constructive knowledge that the building did not have a fire alarm system. Second, Trans-American claims that the terms "alarms" and "maintain" in the Fire Protective Safeguards endorsement are ambiguous, and that under a correct interpretation, Trans-American's loss qualifies as a covered loss under the policy. Colony has interpreted "alarms" to require a "fire alarm system." According to Trans-American, the alarm system it had in place satisfied the "alarms" requirement, and Colony's interpretation places an additional duty on Trans-American not contemplated by the parties. With respect to "maintain," Trans-American alleges that Colony is interpreting the term to be synonymous with "obtain," whereas Trans-American believes the term should be interpreted as "to continue." If Trans-American were to prevail in either of its requests for declaratory relief, Colony would have wrongly denied coverage for Trans-American's loss.

Count II is a straightforward claim that Colony has breached the insurance policy by refusing to reimburse Trans-American for the full amount of its covered losses. In Count III, Trans-American claims that Colony should be estopped from denying coverage for Trans-American's loss. Trans-American alleges that it relied on Colony's initial determination of coverage and payments when it began to repair the damages to the insured premises. Thus, Trans-American argues that it incurred significant expenses as a result of Colony's representation, and that it would be highly inequitable to allow Colony to deny coverage.

## II. Analysis

### A. Count I – Declaratory Relief

Colony moves to dismiss Trans-American's claim for declaratory relief on the grounds (1) that there is no actual controversy, and (2) that the claim is duplicative of Trans-American's claim for breach of contract. Both arguments lack merit.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could

be sought." 28 U.S.C. § 2201(a).[3] The phrase "case of actual controversy" refers to the types of cases and controversies that are justiciable under Article III. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The parties' dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.*

Here, there is a substantial controversy between Trans-American and Colony. Colony has denied coverage for Trans-American's losses because Trans-American did not have a fire alarm system. Trans-American alleges that Colony wrongly denied coverage based on an incorrect interpretation of the insurance policy. Trans-American also alleges that even if the policy required it to have a fire alarm system, Colony waived that requirement. A declaratory judgment will establish the parties' legal rights and obligations under the insurance policy. This will determine whether Colony wrongly denied coverage. Hundreds of thousands of dollars are at stake. The parties' dispute is definite and concrete and admits of specific relief. Thus, there is an actual controversy within the meaning of the Declaratory Judgment Act.

Colony's reliance on insurance cases such as *Village Square Condominium of Orlando, Inc. v. Nationwide Mutual Fire Insurance Co.*, No. 6:09-CV-1711, 2009 WL 4899402 (M.D. Fla. Dec. 11, 2009), is unavailing. In *Village Square*, the court dismissed a claim for declaratory relief, finding that the claim failed to allege any real or immediate controversy. The court emphasized, however, that "[t]he gravamen of the Complaint is that Defendant breached its contract of insurance by failing to pay for all of Plaintiff's covered losses—not that the contract is ambiguous or that the parties are uncertain as to their rights. Indeed, as Defendant points out, *the Complaint does not identify any particular provision in the contract that would necessitate declaratory relief.*" *Id.* at *2 (emphasis added). Unlike in *Village Square*, Trans-American has

---

[3] Count I purports to state a claim for declaratory relief under Florida's Declaratory Judgment Act, Fla. Stat §§ 86.011-86.111. However, Florida's Declaratory Judgment Act is merely a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts. Because the case has been removed to federal court, the claim is properly analyzed under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. *See Vill. Square Condo. of Orlando, Inc. v. Nationwide Mutual Fire Ins. Co.*, No. 6:09-CV-1711, 2009 WL 4899402, at *2 (M.D. Fla. Dec. 11, 2009); *see also Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 n.1 (S.D. Fla. 2008) ("As a practical matter, however, the elements required under the federal or state declaratory judgment acts are not materially different.").

identified specific provisions of the insurance policy that it alleges are ambiguous and that require this Court's interpretation. Thus, there is a dispute as to the parties' rights and obligations under the insurance policy that did not exist in *Village Square*.[4] Under the circumstances here, Trans-American properly states a claim for declaratory relief.

Colony also argues that Trans-American's claim for declaratory relief should be dismissed because it is duplicative of the claim for breach of contract. According to Colony, the dispute regarding coverage will be resolved in the claim for breach of contract, and Trans-American cannot recover anything from the claim for declaratory relief that it cannot recover from its claim for breach of contract. This position, however, directly contravenes 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Section 2201 provides that a court "may declare the rights . . . of any interested party . . . whether or not further relief is or could be sought." And Rule 57 provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Accordingly, the existence of another remedy does not preclude declaratory relief. *See Johnson v. Geico Gen. Ins. Co.*, No. 08-80740-CIV, 2008 WL 4793616 (S.D. Fla. Nov. 3, 2008) (citing *Powell v. McCormack*, 395 U.S. 486, 517-18 (1969)).[5] Colony's motion to dismiss Count I for declaratory relief is therefore denied.

### B.  Count III – Equitable Estoppel

Colony also moves to dismiss Trans-American's claim for equitable estoppel. In Florida, "equitable estoppel is a defensive doctrine rather than a cause of action." *Agency for Health*

---

[4] Similarly, Colony's reliance on *Scritchfield v. Mutual of Omaha Insurance Co.*, 341 F. Supp. 2d 675 (E.D. Tex. 2004), is misplaced. The *Scritchfield* court dismissed a claim for declaratory relief under a flood insurance policy, finding that there was "no actual controversy between the parties regarding whether the flood events are covered under the policy." *Id.* at 682. Here, there is a dispute as to whether Trans-American's losses due to fire are covered under the policy.

[5] Of course, a district court always has some discretion in deciding whether to give a declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995). Thus, in *Kougl v. Xspedius Management Co.*, No. 3:04-CV-2518, 2005 WL 1421446 (N.D. Tex. June 1, 2005)—another case relied on by Colony—the court declined to exercise jurisdiction over a claim seeking a declaration that the parties entered into enforceable contracts and that the plaintiffs were entitled to compensation as a result of the defendants' breach of those agreements, because those issues would be resolved in the context of breach of contract actions. Here, however, the Court finds that the claim for declaratory relief is appropriate and will exercise its discretion to hear the claim.

*Care Admin. v. MIED, Inc.*, 869 So. 2d 13, 20 (Fla. 1st DCA 2004). "Florida has long recognized that '[e]quitable estoppel is not designed to aid a litigant in gaining something, but only in preventing a loss.'" *Id.* (quoting *Kerivan v. Fogal*, 22 So. 2d 584, 586 (Fla. 1945)). "[E]quitable estoppel 'estops' or bars a party from asserting something (e.g., a fact, a rule of law, or a defense) that he or she otherwise would be entitled to assert." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 (Fla. 2001).

In Count III, Trans-American alleges that it relied to its detriment on Colony's initial determination that the loss was covered under the insurance policy, and "prays for damages in its favor with pre-judgment interest, costs, and attorneys fees." This claim is an improper use of equitable estoppel. Trans-American may be able to invoke equitable estoppel to prevent Colony from asserting lack of coverage as a defense to Trans-American's other claims. However, under Florida law, Trans-American cannot seek affirmative relief through a claim for equitable estoppel. Accordingly, Colony's motion to dismiss Count III for equitable estoppel is granted.

### III. Conclusion

For the foregoing reasons, Colony's Motion to Dismiss Counts I and III of Plaintiff's Complaint is GRANTED IN PART, DENIED IN PART. Count III for equitable estoppel is dismissed.

DONE and ORDERED in Chambers, Miami, Florida, August 26, 2010.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All Counsel of Record